IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANAND MUNSIF | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-5649 |
| | : | |
| JEFFERSON HOSPITAL, et al. | : | |
| | : | |
| | : | |
| ANAND N. MUNSIF | : | CIVIL ACTION |
| | : | |
| v. | : | No. 15-6190 |
| | : | |
| JEFFERSON UNIVERSITY PHYSICIANS, | : | |
| et al. | : | |
| | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                **August 2, 2016**

In these consolidated actions, pro se Plaintiff Anand N. Munsif brings claims against
Thomas Jefferson University Hospital, Inc. (Jefferson), Jefferson University Physicians
(Physicians), and twenty "John Doe" Defendants for lack of informed consent, professional
negligence, agency and vicarious liability, loss of consortium, and suspected criminal violations,
all arising out of treatment he received while under Defendants' care for an apparent foot
infection in October 2013. Jefferson and Physicians have jointly moved to dismiss both cases for
failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil
Procedure 12(b)(6) and based on Munsif's failure to file certificates of merit, as required under
Pennsylvania Rule of Civil Procedure 1042.3. Munsif has provided only a limited response to
either motion to date. For the reasons set forth below, Defendants' original Rule 12(b)(6)
motions will be granted in part insofar as Munsif's claims based on lack of informed consent will
be dismissed with prejudice against Jefferson and Physicians, and his loss of consortium claims
and claims based on suspected criminal violations will be dismissed with prejudice against all

Defendants.  While Munsif's remaining claims—his lack of informed consent claims against the John Doe Defendants and his professional negligence-based claims against all Defendants—are subject to dismissal for failure to file certificates of merit, Munsif has requested an extension of time in which to file the necessary certificates.  As set forth below, the Court will grant Munsif an additional thirty days in which to file certificates of merit and will reserve ruling on Defendants' motions as to these claims pending receipt of Munsif's submission.

**BACKGROUND**[1]

On October 18, 2013, Munsif went to Jefferson seeking treatment for an apparent foot infection.  Physicians in the emergency room diagnosed him with diabetic ketoacidosis and necrotizing fasciitis and recommended surgery.  According to Munsif, this diagnosis was erroneous and was not justified based on his history, physical examination, or blood tests.  Munsif also asserts the Doppler device used to evaluate the pulses in his feet at the time the physicians decided to take him to surgery was "not good."  Compl. ¶ 21.[2]  Although Munsif protested that he had previously been treated successfully with antibiotics for the same foot problem in New Jersey, he was told surgery was his only option.  Jefferson personnel did not advise him that nonsurgical treatment, which was also less costly, was available, nor did they advise him of the potential risks and complications of the surgery or anesthesia.

---

[1] The following facts are drawn from Munsif's nearly identical Complaints in the above-captioned actions, the well-pleaded factual allegations of which must be taken as true for purposes of evaluating Defendants' Rule 12(b)(6) motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Because Munsif is proceeding pro se, the Court construes his Complaints liberally.  *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (recognizing pro se complaints must be "h[e]ld to less stringent standards than formal pleadings drafted by lawyers").

[2] Citations in the form "Compl. ¶ __" refer to both of Munsif's Complaints.

Munsif underwent surgery, believing the purpose of the surgery was for "exploration." Compl. ¶ 25.  Jefferson personnel never told him he would be undergoing a sizeable amputation. Following surgery, however, Munsif discovered his right foot had been partially amputated.

While Munsif was recovering at Jefferson, a psychologist visited him to test his cognitive functioning, including his ability to calculate and the accuracy of his memory.  The nature of this testing led Munsif to ask whether there had been a problem with the surgery or anesthesia, but he did not receive an answer.

At some point, Munsif was transferred to PowerBack Rehabilitation.  While at PowerBack, Munsif underwent additional cognitive function testing, but he does not know whether any surgery- or anesthesia-related damage was found.  Munsif also experienced several episodes of low blood sugar, which he attributes to improper insulin dosages.  Although these episodes occurred at PowerBack, Munsif questions whether doctors in training at Jefferson may have been involved in determining the dosages.  During a follow up visit to Jefferson, hospital faculty discussed scheduling Munsif for further amputations on his right lower extremity every few weeks.  Munsif was alarmed by this "unusual" recommendation, which was inconsistent with what he had been told prior to surgery.  *See* Compl. ¶ 33.[3]

Following his discharge from PowerBack, Munsif saw another doctor outside of the Philadelphia area.  Apart from one brief hospital admission, which Munsif thought was to correct problems from his earlier surgery at Jefferson,[4] he has not required any further surgery, contrary to what had been recommended at Jefferson.  As a result of the surgery he underwent at

---

[3] Munsif claims to have been told or to have heard rumors that business competitors, doctors he has previously sued, friends of such persons, or unlicensed physicians were involved in his treatment decisions or care during his stay in Philadelphia.  *See* Compl. ¶¶ 31-32.

[4] It is not clear from the Complaint whether this brief hospital admission included surgery.

Jefferson, Munsif has experienced chronic pain in his right foot and lower leg and difficulty walking, among other physical and emotional injuries.

In mid-October 2015, Munsif filed two nearly identical Complaints regarding the treatment he received at Jefferson—one in the Court of Common Pleas of Philadelphia County and one in this Court[5]—asserting claims against Jefferson, Physicians, and various John Doe Defendants for lack of informed consent, professional negligence, agency and vicarious liability, and loss of consortium. Construing the Complaints liberally, the Court understands Munsif's lack of informed consent claims to challenge Defendants' failure to advise him, in advance of his surgery, that an amputation would be performed or that less costly, nonsurgical treatment was available, and failure to disclose potential complications of the procedure. Munsif's professional negligence claims appear to concern his treating physicians' misdiagnosis of his foot problem, performance of an unnecessary partial amputation, and failure to offer him nonsurgical treatment options. His agency and vicarious liability claims appear to seek to hold Jefferson and Physicians liable for informed consent violations and professional negligence by doctors involved in his care and, possibly, for corporate negligence. In his loss of consortium claims, Munsif seeks damages on his own behalf for a two-year delay of his marriage during his recuperation from surgery. The Complaints also allege, without elaboration, that Munsif's actions are "brought under . . . statutes that relate to attempted murder, conspiracy to create harm to the plaintiff, Title 15 (treason, espionage, etcetera) of United States code, fraud statutes, etcetera." Compl. ¶ 5. It is not clear, however, whether Munsif is in fact seeking to pursue claims for such violations, as the Complaints also suggest these violations will be prosecuted

---

[5] Munsif filed the state court action on October 15, 2015, and filed the federal court action the following day.

federally in this District and the District of New Jersey, and these violations do not appear in the "causes of action" section of the Complaints.

In November 2015, Jefferson and Physicians removed the state court action to this Court on the basis of diversity jurisdiction,[6] and filed substantially identical Rule 12(b)(6) motions to dismiss in both cases. Munsif did not respond to either motion. The following month, in December 2015, Jefferson and Physicians filed a motion to consolidate the two actions, which this Court granted by Order of January 8, 2016. Two months later, on March 9, 2016, Jefferson and Physicians filed a notice of intention to enter judgment of non pros for failure to file certificates of merit, alerting Munsif they intended to seek entry of a judgment non pros against him in thirty days if he failed to file certificates of merit, as required by Pennsylvania Rule of Civil Procedure 1042.3. Munsif again did not respond, nor did he file any certificates of merit, and on April 14, 2016, consistent with their March notice, Jefferson and Physicians filed a praecipe for entry of judgment non pros in accordance with Pennsylvania procedure. Five days later, Jefferson and Physicians filed a further motion to dismiss pursuant to Rule 12(b)(6), seeking dismissal of these consolidated actions based on Munsif's failure to file the required certificates of merit.

By Order of June 15, 2016, this Court notified Munsif it intended to treat Defendants' later-filed motion to dismiss for failure to file certificates of merit as a motion for summary

---

[6] The requirements for diversity jurisdiction—complete diversity of citizenship of the parties and an amount in controversy in excess of $75,000, *see* 28 U.S.C. § 1332(a)—appear to be satisfied in this case. According to his Complaints, Munsif is a citizen of New Jersey. Munsif also alleges—and Defendants in their Notice of Removal concede—that Jefferson and Physicians, both nonprofit corporations organized under Pennsylvania law and located in Pennsylvania, are citizens of Pennsylvania. The citizenship of the John Doe Defendants is disregarded for purposes of determining whether the state court action is removable based on diversity of citizenship. *See* 28 U.S.C. § 1441(b)(1). Finally, Munsif seeks damages well in excess of the $75,000 jurisdictional threshold. *See* Compl. ¶¶ 10, 55.

judgment and granted him until June 30, 2016, to submit any materials he wished the Court to consider in deciding the motion.  On June 29, 2016, Munsif filed a "Reply" to the Court's June 15, 2016, Order, in which he suggested that because he is a physician, his Complaint should be deemed to satisfy the certificate of merit requirements as it reflects his professional judgment that his claims have merit.  Alternatively, Munsif requests an additional sixty days in which to file the necessary certificates of merit.  *See* Pl.'s Reply ¶ 18.  Jefferson and Physicians oppose Munsif's extension request.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In evaluating a Rule 12(b)(6) motion, a district court first should separate the legal and factual elements of the plaintiff's claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."  *Id.* at 210-11.  The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).  Applying these standards, it is apparent that some of Munsif's claims must be dismissed.

First, insofar as Munsif seeks to bring claims against Defendants for alleged violations of statutes "relat[ing] to attempted murder, conspiracy to create harm to the plaintiff, Title 15 (treason, espionage, etcetera) of United States code, fraud statutes, etcetera," Compl. ¶ 5, he has failed to provide any factual basis for such claims.  Munsif's attempted murder and conspiracy

allegations appear to be premised entirely on his suspicion that unnamed persons involved in his medical care at Jefferson may know, may have worked with, or may have friends in common with, unnamed individuals sued or otherwise implicated in another case Munsif previously filed in federal court, *see* Compl. ¶¶ 7, 14B, and "may have decided to cause amputation surgery to reduce the liability of their friends or even kill [him]," Pls.' Reply ¶ 15. Such allegations, however, are nothing more than speculation, which this Court is not required to credit on a motion to dismiss. *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542 (3d Cir. 2012) ("Even on a motion to dismiss, we are not required to credit mere speculation."). While Munsif also alludes to violations of Title 15 of the United States Code and unspecified "fraud statutes," he does not identify any particular provision of Title 15 Defendants allegedly violated, and he has not pleaded any of the elements of a fraud claim. Any claims for such violations will therefore be dismissed. Because Jefferson and Physicians' arguments for dismissal of any claims based on these allegations are equally applicable insofar as the claims are asserted against the John Doe Defendants, and because Munsif was provided an opportunity to argue the validity of such claims in response to Jefferson and Physicians' motions to dismiss, the claims will be dismissed as to all Defendants. *See Hartford Cas. Ins. Co. v. Am. Recycling Sys., Inc.*, No. 09-3355, 2010 WL 3420046, at *4 n.2 (E.D. Pa. Aug. 25, 2010) (dismissing an action against two defendants, only one of whom had filed a motion to dismiss, where the plaintiff had the opportunity to argue the validity of its claim in response to the moving defendant's motion, which raised a defense applicable to both defendants).[7]

---

[7] Although a pro se plaintiff should ordinarily be granted leave to amend when his complaint is subject to dismissal under Rule 12(b)(6), it is apparent amendment would be futile here. In his Reply to the Court's June 15, 2016, Order, Munsif defends his claims for attempted murder based solely on speculation that Jefferson physicians might want to harm him because of their relationships with unnamed defendants in his earlier federal court action or because of

Second, Munsif's loss of consortium claims fail as a matter law. Loss of consortium is "a right evolving out of the marriage relationship and is grounded on the loss of a spouse's service after injury." *Sprague v. Kaplan*, 572 A.2d 789, 790 (Pa. Super. Ct. 1990) (citation omitted). Under Pennsylvania law, "a cause of action for loss of consortium is not available to a party who was not married to the injured party *at the time of the injury*." *Id.*; *accord Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1149 (Pa. 1997) ("Because it arises from the marital relationship, a claim for loss of consortium does not exist if the complaining parties are not married when the injury occurs."). Thus, because Munsif was not married at the time of his surgery, but instead claims the surgery and associated recovery time delayed his marriage, *see* Compl. ¶ 55, he cannot maintain a loss of consortium claim as a matter of law. Further, since Munsif himself is the injured party in this case, any loss of consortium claim would belong not to him but to his (nonexistent) spouse. For these reasons, Munsif's loss of consortium claims will be dismissed with prejudice.[8]

Third, Munsif has failed to state a claim for lack of informed consent against Jefferson or Physicians as a matter of law. In Pennsylvania, "[a] claim of lack of informed consent sounds in the intentional tort of battery because an operation performed without the patient's consent is deemed to be the equivalent to a technical assault." *Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1237 (Pa. 2002); *see also Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748 (Pa.

---

allegations he made in that action. *See* Pl.'s Reply ¶¶ 15-16. He defends his claims of "Title 15 or 18 of United States code type of offenses" based on "[r]umors" of a "self-confessed spy in a jail outside Philadelphia" and two professors under investigation in Boston. *See id.* ¶ 18. These allegations fail to render Munsif's claims based on suspected criminal violations plausible; therefore, these claims will be dismissed with prejudice.

[8] These claims, too, will be dismissed as to all Defendants, as Jefferson and Physicians' arguments for dismissal are equally applicable to the John Doe Defendants.

2002) ("[T]he informed consent doctrine derives from the very fact that surgical or operative procedures, if not consented to, amount to a battery."). Under this theory, it is the physician who performs the operation—not the hospital—who has the duty of obtaining informed consent. *See Valles*, 805 A.2d at 1239 ("Our lower courts have recognized that the duty to obtain informed consent belongs solely to the physician."); *Southard v. Temple Univ. Hosp.*, 731 A.2d 603, 614 (Pa. Super. Ct. 1999) ("[H]ospitals have no duty to a patient under Pennsylvania's informed consent doctrine."), *rev'd in part on other grounds*, 781 A.2d 101 (Pa. 2001); *Kelly v. Methodist Hosp.*, 664 A.2d 148, 151 (Pa. Super. Ct. 1995) (finding "compelling reasons for not imposing upon hospitals the duty of obtaining informed consent," as the surgeon, not the hospital, "has the education, training and experience to advise each patient of risks associated with the proposed surgery" and "is in the best position to know the patient's medical history and to evaluate and explain the risks of a particular operation in light of the particular medical history").[9]

Because "surgery performed without a patient's informed consent constitutes a technical battery, negligence principles generally do not apply" to informed consent claims, *Montgomery*, 798 A.2d at 749, and a hospital cannot be liable for an informed consent violation under a corporate negligence theory, *see Kelly*, 664 A.2d at 150 (holding a claim that a hospital was negligent in failing to ensure physicians obtained informed consent was not "a viable cause of action in Pennsylvania"). While hospitals can be held vicariously liable for torts committed by

---

[9] In *Friter v. Iolab Corp.*, 607 A.2d 1111, 1114 (Pa. Super. Ct. 1992), the Pennsylvania Superior Court recognized an exception to the general rule that the duty to obtain informed consent runs from the physician to the patient, holding a hospital participating in a clinical investigation of an unapproved medical device had such a duty where it had "had assumed a duty, pursuant to FDA regulations, to ensure that any patient involved in a clinical study was made aware of the clinical nature of the procedure and the risks associated with such experimentation, and had signed a consent form acknowledging that fact." This case does not come within the limited exception recognized in *Friter*.

physician-employees, the Pennsylvania Supreme Court has declined to extend vicarious liability to informed consent violations.  *See Valles*, 805 A.2d at 1237-39.  Rather, given the nature of informed consent, which occurs within the "highly individualized and dynamic" physician-patient relationship and "flows from the discussions each patient has with his physician, based on the facts and circumstances each case presents," that Court has held "that as a matter of law, a medical facility lacks . . . control over the manner in which the physician performs his duty to obtain informed consent" and therefore "cannot be held vicariously liable for a physician's failure to obtain informed consent."  *Id.* at 1239.

The common law doctrine of informed consent has been codified in Pennsylvania in the Medical Care Availability and Reduction of Error (MCARE) Act, 40 Pa. Stat. § 1303.504, referenced in Munsif's Complaint.  Like the common law doctrine, the statute provides that the duty to obtain informed consent belongs to the physician, *id.* § 1303.504(a), and contemplates that liability for informed consent violations will be imposed only on physicians, *see id.* § 1303.504(d) (setting forth the circumstances in which "[a] physician" may be liable for failure to obtain informed consent); *cf. Langston v. Milton S. Hershey Med. Ctr.*, No. 15-2027, 2016 WL 1404190, at *9 n.9 (M.D. Pa. Apr. 11, 2016) (suggesting a hospital could not be held liable for obtaining a patient's informed consent under § 1303.504, which "speaks solely of *physicians'* duties").

As Jefferson is a hospital, it cannot be directly or vicariously liable for informed consent violations by physicians who performed Munsif's surgery; therefore, Munsif's informed consent claims, including his agency and vicarious liability claims insofar as they seek to impose liability on Jefferson for informed consent violations, will be dismissed.  This analysis applies equally to

Munsif's informed consent claims against Physicians, which, like the hospital, is a nonprofit corporate entity.[10]

Jefferson and Physicians also seek dismissal of Munsif's professional negligence-based claims—i.e., his claims for professional negligence and his agency and vicarious liability claims insofar as they are based on underlying professional negligence—both on the ground that the claims are inadequately pleaded and because Munsif has failed to file certificates of merit. Although the factual basis for these claims is somewhat lacking in detail, it may be possible for Munsif to correct any pleading deficiencies in the existing Complaints, given the nature of his core grievances, which concern the alleged misdiagnosis of his foot problem and performance of a partial amputation when nonsurgical treatment was available.

Munsif's negligence-based claims are, however, subject to the certificate of merit requirement set forth in Pennsylvania Rule of Civil Procedure 1042.3, which provides that, within sixty days of filing "any action based upon an allegation that a licensed professional deviated from an acceptable professional standard," a plaintiff must file a certificate of merit that either:

> (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

> (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

> (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

---

[10] Jefferson and Physicians do not seek dismissal of Munsif's lack of informed consent claims against the John Doe Defendants, and those claims are not subject to foregoing analysis.

Pa. R. Civ. P. 1042.3(a)(1)-(3).  A plaintiff must file "[a] separate certificate of merit . . . as to each licensed professional against whom a claim is asserted," Pa. R. Civ. P. 1042.3(b), and, if proceeding pro se, must "attach to the certificate of merit the written statement from an appropriate licensed professional as required by subdivisions (a)(1) and (2), Pa. R. Civ. P. 1042.3(e).  The certificate of merit requirement "is substantive state law that must be applied by a federal court sitting in diversity." *Schmigel v. Uchal*, 800 F.3d 113, 115 (3d Cir. 2015).  This requirement applies not only to medical malpractice claims against individual physicians but also to vicarious liability claims based on underlying physician malpractice, *see* Pa. R. Civ. P. 1042.3(a)(2), Note (clarifying a claim of vicarious liability must be supported by a certificate of merit as to the licensed professionals for whom the defendant is responsible), and to corporate negligence claims "premised on allegations that a hospital's actions fell below the applicable medical or professional standard," *Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 248 (E.D. Pa. 2008).[11]  The certificate of merit requirement also applies to claims based on a lack of

---

[11] It is not clear whether Munsif seeks to assert a corporate negligence claim against Jefferson and Physicians.  In the count of his Complaint denominated "Professional Negligence," he specifically alleges negligence by Jefferson physicians.  *See* Compl. ¶ 37 ("All physicians at Jefferson hospital had a duty of care . . . to provide professional medical care to Plaintiff . . . consistent with the accepted standard of care for anesthesiologists, surgeons, etc."); *id.* ¶ 38 (alleging Munsif's injuries and damages "were caused by the direct and proximate result of Jefferson hospital staff's negligence, *which fell below the standard of care for physicians and/or anesthesiologists*" (emphasis added)); *id.* ¶ 41 (describing losses suffered "[a]s a direct and proximate result of *doctors'* deviation from the standard of care (emphasis added)).  And the counts denominated "Agency and Vicarious Liability" appear to seek to hold Jefferson and Physicians liable for the individual physicians' negligence under a theory of agency or vicarious liability.  *See id.* ¶ 46 (alleging "Defendants are liable for acts or omissions of doctors as well as any other doctors, residents or medical assistants involved in the administration of anesthesia who departed from the accepted standard of care in providing professional services to Plaintiff . . .").  Nevertheless, insofar as Munsif also seeks to bring corporate negligence claims against Jefferson and Physicians, it is clear those claims are based on deviations from an acceptable professional standard and are therefore subject to the certificate of merit requirement.  *See id.*

informed consent.  *See* Pa. R. Civ. P. 1042.3(a), Note ("The requirements of [Rule 1042.3(a)] apply to a claim for lack of informed consent."); Pa. R. Civ. P. 1042.1(b) ("A professional liability claim asserted against a licensed professional includes a claim for lack of informed consent.").

As noted, Munsif takes the position that because he is a physician, the filing of the Complaints should be deemed to satisfy the certificate of merit requirement as they reflect his own professional opinion that his claims have merit.  The Court disagrees.

Even assuming a plaintiff may serve as his own "appropriate licensed professional" for purposes of Pennsylvania's certificate of merit requirement,[12] to do so, the plaintiff must have the necessary qualifications.   In a medical malpractice action, an appropriate licensed professional must, inter alia, "[p]ossess an unrestricted physician's license to practice medicine in any state or the District of Columbia," and "[b]e engaged in or retired within the previous five years from active clinical practice or teaching."  40 Pa. Stat. § 1303.512(b); *see also* Pa. R. Civ.

---

¶¶ 52-53 (referring to injuries and financial losses sustained as a result of Defendants' "professional negligence" and "deviation[s] from the standard of care").

[12] It is not clear whether a plaintiff may serve in this capacity under Pennsylvania law.  The Pennsylvania Superior Court has suggested an expert who has been "personally involved in the litigation" may not qualify as an *appropriate* licensed professional, as the expert's "vested interest in presenting the case as positively as possible" renders his credibility as to certification "inherently suspect."  *Parkway Corp. v. Edelstein*, 861 A.2d 264, 267 (Pa. Super. Ct. 2004) (holding an outline prepared by counsel for the plaintiff in a malpractice action describing the defendants' defective performance in the underlying matter did not satisfy the certificate of merit requirement, in part because of counsel's interest in the case).  This consideration would appear to apply with added force as to a pro se plaintiff seeking to serve as his own appropriate licensed professional.  Yet there is some support for the proposition that a party's obvious interest in his own case does not disqualify him from serving as his own expert, so long as he possesses the required qualifications, but is more appropriately considered by the trier of fact in assessing the witness's credibility.  *See Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).  As explained below, however, Munsif does not appear to possess the qualifications necessary to provide a certificate of merit in a medical malpractice case.

P. 1042.3(a)(1), Note ("[I]n a medical professional liability action against a physician, the expert who provides the statement in support of a certificate of merit should meet the qualifications set forth in Section 512 of the [MCARE Act], 40 P.S. § 1303.512.").  It appears Munsif does not meet these requirements, as his New Jersey medical license was suspended in 2011 and apparently expired in 2013.  *See* Defs.' Reply to Pl.'s Reply, Exs. A & B.

Moreover, Munsif must still substantially comply with the requirements of Rule 1042.3, which contemplates the filing of a certificate of merit as a separate document from the complaint, and which requires the certificate of merit to include the appropriate statement from Rule 1042.3(a) and, where the plaintiff is proceeding pro se, to attach any required written statement. The mere filing of a malpractice complaint does not constitute substantial compliance with any of these requirements.

Munsif alternatively requests an extension of time in which to submit the required certificates.  Defendants oppose Munsif's extension request as untimely.  *See* Pa. R. Civ. P. 1042.3(d) (requiring a motion to extend the time for filing a certificate of merit to be filed within thirty days after the filing of a notice of intention to enter judgment of non pros "or on or before the expiration of the extended time where a court has granted a motion to extend the time to file a certificate of merit, whichever is greater").  While Munsif did not request an extension within thirty days after Defendants' filed their notice of intention to enter judgment of non pros, the Court in effect granted Munsif an extension by giving him until June 30, 2016, to submit materials in opposition to the Defendants' motion to dismiss for failure to file certificates of merit.  Because Munsif requested a further extension prior to the June 30, 2016, deadline, the Court will grant his request in part insofar as he shall have an additional thirty days in which to file the required certificates of merit.

Accordingly, for all of the reasons set forth above, Defendants' initial Rule 12(b)(6) motions to dismiss will be granted in part insofar as Munsif's loss of consortium claims and claims based on suspected criminal violations will be dismissed with prejudice as to all Defendants, and his claims based on lack of informed consent will be dismissed with prejudice against Jefferson and Physicians.  The Court will reserve ruling on the balance of Defendants' Rule 12(b)(6) motions and on their motion to dismiss for failure to file certificates of merit for a period of thirty days, until September 1, 2016, to afford Munsif an opportunity to comply with Pennsylvania Rule of Civil Procedure 1042.3.

An appropriate order follows.